J. S51036/18 & J. S51037/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 3695 EDA 2016 |
| | : | |
| RASHAD FICKLING | : | |

Appeal from the Order Entered October 31, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0010327-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 3700 EDA 2016 |
| | : | |
| RYAN ELLIS | : | |

Appeal from the Order Entered October 31, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0010339-2015

BEFORE:  DUBOW, J., NICHOLS, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JANUARY 11, 2019**

The Commonwealth appeals[1] from the October 31, 2016 order granting the motion *in limine* to preclude Commonwealth witnesses, Sergeant Andrew Callaghan and Officer Jason Yerges, from testifying at trial, based upon a finding that they violated a sequestration order in a prior proceeding. After careful review, we reverse and remand for further proceedings consistent with this memorandum.[2]

The trial court summarized the relevant facts and procedural history of this case as follows:

> On July 30, 2015, a preliminary hearing was held before the Honorable Stephanie Sawyer [("Judge Sawyer")]. On said date, Judge Sawyer granted mutual sequestration between the parties. Thereafter, two (2) law enforcement officers testified as to events taking place on or about May 8, 2015 involving [] [Rochelle] Bennett, [and appellees/ co-defendants] Ryan Ellis[] and Rashad Fickling. The sum and substance of [Sergeant] Andrew Calla[g]han's testimony was as follows: a surveillance was set up by the members of the Philadelphia Police Department task force at approximately 12 p.m. where [Sergeant] Calla[g]han came into contact with the confidential informant (CI). The CI was searched and provided pre-recorded buy money in the amount of twenty-dollars ($20). Thereafter, the CI met with co-defendant, [Rochelle] Bennett. [Sergeant] Calla[g]han witnessed an alleged drug transaction

---

[1] The Commonwealth has certified, pursuant to Pa.R.A.P. 311(d), that the trial court's October 31, 2016 order will terminate or substantially handicap the prosecution. Additionally, we note that the Commonwealth filed separate appeals with respect to appellees Rashad Fickling (No. CP-51-CR-0010327-2015) and Ryan Ellis (No. CP-51-CR-0010339-2015) (collectively, "appellees"), but we have elected to dispose of these two appeals in a single adjudication.

[2] Appellee Ryan Ellis did not file a brief in this matter.

exchange between the CI and defendant, Rochelle Bennett. The CI brought back a purple-tinted packet of crack cocaine. Sometime later, the CI was again, following the same operational procedures, sent to make another buy from co-defendant, Rochelle Bennett with pre-recorded buy money in the amount of twenty-dollars ($20). Again, the CI came back with a purple-tinted packet of crack cocaine. After co-defendant, Rochelle Bennett was arrested and handcuffed, [Sergeant] Calla[g]han claims to have seen a twenty-dollar ($20) bill in her possession but failed to collect it. On direct examination of [Sergeant] Calla[g]han there was no mention of the second twenty-dollar ($20) bill. On cross[-]examination, [Sergeant] Calla[g]han admitted there was no "hard evidence" of either subject twenty-dollar ($20) bills ever being recovered, notwithstanding the fact that co-defendant, Bennett had been detained, and her hands were handcuffed behind her back; and moreover, [Sergeant] Calla[g]han did not see co-defendant, Bennett "pass it [the subject two $20] off to anyone." As to co-defendants, Ryan Ellis and Rashad Fickling, [Sergeant] Calla[g]han testified that he observed co-defendant, Ellis arrive on the 600 block of Winton Street in a white Chevy Impala. Co-defendant, Ryan Ellis exited said vehicle and walked over to and hug[ged] three (3) males. One (1) of the males was co-defendant, Rashad Fickling. At that point [Sergeant] Calla[g]han saw an exchange involving co-defendant, Ryan Ellis receiving a full sandwich sized bag and then re-enter the white Chevy Impala. [Sergeant] Calla[g]han then radioed information to uniform backup and the subject vehicle was subsequently stopped. At some point thereafter, co-defendant, Ellis was brought down the street where [Sergeant] Calla[g]han observed what he believed to be the same bag and identified co-defendant, Ryan Ellis. [Sergeant] Calla[g]han then testified that he stopped three (3) males that had been standing on the south side of the street and identified co-defendant, Rash[a]d Fickling. Of noteworthiness was the fact that there was no mention of any exchange of U.S. currency between the

> co-defendants, Ellis and Fickling, notwithstanding the fact that each defendant was said to have $2,900 and $1,259 respectively, confiscated from them.
>
> The sum and substance of [the testimony of] Police Officer Jason Yerges was as follows: between the hours of 12 p.m. and 3 p.m., Officer Yerges searched the []CI[] according to department policy and then supplied the CI with twenty-dollar ($20) pre-recorded buy-money. The CI was then instructed to go to the 600 block of Winton Street and attempt to purchase crack cocaine. Officer Yerges then released the CI in the area of 600 Winton Street where Sergeant Callaghan took over observation of the CI. The Cl returned a short time later turning over one (1) purple-tinted packet containing crack cocaine, which was placed on a property receipt. Within the same timeframe, between 12 p.m. and 3 p.m., the CI was again searched and thereafter supplied with another pre-recorded twenty-dollar ($20) bill buy-money. The CI was then dispatched to the 600 block of Winton Street and returned a short time later with another purple-tinted packet containing crack cocaine. On cross[-]examination, Officer Yerges related that no pre-recorded buy-money, whatsoever, was ever recovered from, the target of the investigation, co-defendant [Rochelle] Bennett.

Trial court Rule 1925(a) opinion, 1/16/18 at 1-3 (citations to notes of testimony omitted).

Following the Commonwealth's presentation of evidence and oral argument by the parties, Judge Sawyer dismissed all the charges against appellees Fickling and Ellis for lack of evidence. (*See* notes of testimony, 7/30/15 at 38-39.) In contrast, Judge Sawyer held the remaining drug-related charges against co-defendant Bennett for court. (*Id.*) Following her ruling, Judge Sawyer was made aware of potential contact between

Commonwealth witnesses Sergeant Callaghan and Police Officer Yerges as they had passed each other entering the courtroom to testify, by a disinterested witness, Torjo Ghose, and Public Defender, Kasturi Sen ("Attorney Sen"). The trial court summarized this matter as follows:

> After being sworn by the Court, Mr. Ghose testifie[d] that he overheard a conversation between the officers consisting primarily of "dude you're up," or "dude they need you." Mr. Ghose then observed that the person speaking was [Sergeant] Calla[g]han, and that [Sergeant] Calla[g]han was speaking to Police Officer Yerges. Other than the aforementioned dialogue, Mr. Ghose testified that he overheard [Sergeant] Calla[g]han say the words "careful" and "question" along with other whispering. Mr. Ghose's testimony was further corroborated by [Attorney Sen], who also heard "someone calling out, dude, you're up. And the person walking up was Officer Yerges, who was recognized by [Attorney Sen]. So the bearded man that he (Ghose) saw, who was being summoned, and told, dude, you're up, was Officer Ye[r]ges" and that the words "careful" and "question" were spoken by the officer.

Trial court Rule 1925(a) opinion, 1/16/18 at 4 (citations to notes of testimony omitted).

Significantly, the record reflects that Ghose indicated during the preliminary hearing that he was unable to make out the substance of the conversation between Sergeant Callaghan and Officer Yerges:

> Q. So you don't know what they were talking about?
>
> A. I don't.
>
> Q. You didn't hear anything more substantive other than those two words?

A.      I did not.

Notes of testimony, 7/30/15 at 43.

Moreover, Attorney Sen confirmed that she heard someone call out "dude, you're up" and saw a bearded man, whom she knew to be Officer Yerges, but did not hear any conversation. (**Id.** at 42.)  Following Ghose's testimony, Judge Sawyer ruled that Sergeant Callaghan and Officer Yerges had violated her sequestration order but explicitly declined to impose sanctions, and the hearing was concluded. (**Id.** at 43-45.)

Thereafter, on October 15, 2015, the Commonwealth elected to recharge appellees with possession of a controlled substance, possession with intent to deliver a controlled substance, and criminal conspiracy;[3] and a jury trial was ultimately scheduled before the Honorable Earl W. Trent ("Judge Trent") for October 31, 2016.  That same day, Judge Trent entered an order granting an oral motion **in limine** to preclude Sergeant Callaghan and Officer Yerges from testifying at trial based on a finding by Judge Sawyer that they had violated her sequestration order at the prior July 30, 2015 preliminary hearing.  (**See** notes of testimony, 10/31/16 at 6, 9.)  Specifically, Judge Trent's order stated as follows:

> AND NOW, this 31st day of October, 2016, the testimony of Sgt[.] Callaghan and Officer Yerges is precluded from being introduced at trial following the finding by Judge Sawyer that sequestration was violated by them in this matter at a prior proceeding.

---

[3] 35 P.S. §§ 780-113(a)(16), (30), and 18 Pa.C.S.A. § 903, respectively.

Trial court order, 10/31/16.

On November 29, 2016, the Commonwealth filed a timely notice of appeal, certifying that Judge Trent's October 31, 2016 order will terminate or substantially handicap its prosecution.[4]  Although not ordered to do so, the Commonwealth filed its concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), that same day.  The trial court filed its Rule 1925(a) opinion on January 16, 2018.

The Commonwealth raises the following issue for our review:  "Did the [trial] court err by barring the Commonwealth's witnesses[, Sergeant Callaghan and Officer Yerges,] from testifying against [appellees] at trial based on an alleged sequestration violation at a preliminary hearing?" (Commonwealth's brief at 3.)

Pursuant to Pennsylvania Rule of Evidence 615, a trial court has discretion to "order witnesses sequestered so that they cannot learn of other witnesses' testimony."  Pa.R.E. 615.  It is well settled that "[i]t is within the suppression court's discretion to select the appropriate remedy for the violation of its sequestration order."  ***Commonwealth v. Kane***, 940 A.2d 483, 490 n.4 (Pa.Super. 2007) (citation omitted), ***appeal denied***, 951 A.2d 1161 (Pa. 2008).  Once a sequestration order is in effect, possible remedies for a violation "include ordering a mistrial, forbidding the testimony of the

---

[4] The Commonwealth also filed an appeal with respect to co-defendant Rochelle Bennett's case, but that appeal has been discontinued.

offending witness, or an instruction to the jury." Pa.R.E. 615 **Comment**

(citation omitted).

> Where violation of a sequestration order occurs, the remedy selected
>
> > is within the sound discretion of the trial court. In exercising its discretion, the trial court should consider the seriousness of the violation, its impact on the testimony of the witness, and its probable impact on the outcome of the trial. We will disturb the trial court's exercise of its discretion only if there is no reasonable ground for the action taken.

**Commonwealth v. Rose**, 172 A.3d 1121, 1127 (Pa.Super. 2017) (citation

omitted), **appeal denied**, 186 A.3d 369 (Pa. 2018).

Instantly, the record reflects that Judge Sawyer concluded that

Sergeant Callaghan and Officer Yerges violated her sequestration order[5] at the

July 30, 2015 preliminary hearing but declined to impose sanctions upon

them. Specifically, Judge Sawyer stated, in relevant part, as follows:

> THE COURT: I have -- for the record, I have found that he has violated that sequestration order, period.

---

[5] Judge Sawyer's sequestration order stated as follows:

> Mutual sequestration is granted. So for those in the audience who are not clear on what sequestration means, you may not be in the courtroom if you might potentially be testifying at trial. So you can't sit and listen to the testimony at the preliminary hearing if you might testify later. So I'm granting mutual sequestration to make sure everyone who is going to testify is outside the courtroom.

Notes of testimony, 7/30/15 at 4-5.

> [Counsel for Co-Defendant Rochelle Bennett]: Meaning Sergeant Callaghan and Officer Yerges?
>
> THE COURT:  Both of them actually, yes.  Because they -- because as soon as the sergeant said careful, the officer should have said, don't say anything to me. I haven't testified yet.  Be quiet.  Both of them had an affirmative obligation to not have a conversation about this testimony. . . .
>
> . . . .
>
> . . . . And I'm not -- I'm finding they're in violation. **I'm not finding them -- I'm not giving them a penalty.  I'm not giving them a penalty in contempt, but I am finding that they violated the sequestration order.**

Notes of testimony, 7/30/15 at 45 (emphasis added).

Thereafter, in response to an oral defense motion, Judge Trent precluded Commonwealth witnesses Sergeant Callaghan and Officer Yerges from testifying against appellees at the trial scheduled for October 31, 2016, based upon the prior determination by Judge Sawyer that her sequestration order was violated.  (Notes of testimony, 10/31/16 at 5-6.)  In support of this decision, Judge Trent reasoned as follows:

> What was of most concern to this Trial Court was the nature of the violation, keeping in mind that both the Commonwealth and the Philadelphia Police Department have sworn duties to uphold.  The fact that there are an overabundance of criminal cases that are heard daily does not lessen the standards that are necessary to uphold the integrity of the criminal system.  In this particular case two (2) things are apparent and were thus considered by this Court: [] the preliminary hearing testimony by the Commonwealth witnesses was not wholly transparent

according to the preliminary hearing notes of testimony. Specifically, the Commonwealth witness's preliminary hearing testimony was unable to explain why the pre-recorded buy-money was unaccounted at the conclusion of the investigation and may conceivably be an area of understandable discernment for the subject police officers testifying as witnesses. Clearly, the officers' testimony contained no hard evidence of the pre-recorded "buy money," which was an integral part of the subject narcotics investigation conducted by the Officers and an integral part of the Commonwealth case. The testimony of a disinterested party, who happened to overhear what was said by [Sergeant] Calla[g]han to Officer Yerges, and the independent testimony of a Public Defender/Officer of the Court, corroborating part of the testimony of the independent witness, raises adequate suspicion for this Court to grant a motion in limine in favor of [appellees]. According to the testimony of the disinterested witness, the specific words used by [Sergeant] Calla[g]han were particularly troubling because they are words that many times are associated within the context of one's testimony. With the nature of this type of incident involving tainted Commonwealth witness testimony, it serves to undermine the integrity of the criminal justice system if not taken seriously. In short, this Court has and will always take a hard look at potentially feigned testimony no matter who the witness may be.

Trial court Rule 1925(a) opinion, 1/16/18 at 6-7.

Upon review, we find that Judge's Trent's decision to preclude Sergeant Callaghan and Officer Yerges from testifying, based upon their purported violation of Judge Sawyer's prior June 30, 2015 sequestration order, was an improper exercise of the trial court's discretion. Here, the record reflects that the initial charges against appellees had already been dismissed for lack of evidence at the time Judge Sawyer determined that

Sergeant Callaghan and Officer Yerges had violated her sequestration order, and she exercised her discretion to not sanction the officers. (**See** notes of testimony, 7/30/15 at 45.) Thus, it logically follows that the imposition of a sanction for purported violation of another judge's sequestration order, thereby precluding witnesses from testifying in a subsequent jury trial when the prior order did not impose such a sanction, constitutes an abuse of discretion. Moreover, it appears that Judge Trent's concerns are with the credibility of the officers' testimony, and this issue should be left to the jury at trial.

In reaching this decision, we further emphasize that there was "no reasonable ground" for Judge Trent's outright preclusion of Sergeant Callaghan's and Officer Yerges' testimony from the October 31, 2016 trial. **See Rose**, 172 A.3d at 1127. This is especially true in light of the fact that Judge Trent inexplicably denied the Commonwealth's request to call Sergeant Callaghan and Officer Yerges as witnesses at the October 31, 2016 hearing in order to elicit evidence to clarify the extent of the momentary exchange at the June 30, 2015 preliminary hearing. (**See** notes of testimony, 10/31/16 at 8-9.)

Accordingly, we reverse the trial court's October 31, 2016 order and remand for further proceedings consistent with this memorandum.

Order reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/19